***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LARRY J. KUSHNER, | : |
| Petitioner, | : Civil Action No. 14-3709 (PGS) |
| v. | : OPINION |
| THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, et al., | : |
| Respondents. | : |

**SHERIDAN, District Judge**

Petitioner Larry J. Kushner, a convicted criminal in the State of New Jersey, files the instant Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging a conviction and sentence imposed by the State for theft by deception and failure to file tax return. Respondents have filed a Response, ECF No. 7, and Petitioner has filed a Reply, ECF No. 8. The Court has considered the parties' submissions, as well as the relevant records of this case. For the reasons stated below, the Court denies the Petition.

I.    FACTUAL BACKGROUND

Petitioner and his wife were arrested on February 8, 2007 by the State of New Jersey on charges of credit card fraud and identity theft.[1] They were released on bail. For the reasons articulated *infra*, a grand jury indictment was not returned against Petitioner until May 12, 2008, some fifteen months later, charging Petitioner with 26 counts of thefts by deception, credit card

---

[1] The Court relies on the findings of fact as recited by the New Jersey appellate court in *State v. Kushner*, Indictment No. 08-05-1175, 2012 WL 5990107 (N.J. Sup. Ct. App. Div. Dec. 3, 2012), on direct appeal.

fraud, tax evasion, and identity thefts. After a protracted plea negotiation, Petitioner pled guilty on September 14, 2010 to one count of theft by deception and one count of failure to file a tax return. As part of the plea agreement, Petitioner reserved the right to challenge the indictment on speedy trial grounds, and agreed to make restitution in the amount of $1,122,200.00. The trial court entertained Petitioner's motion to dismiss the indictment for lack of a speedy trial on November 18, 2010, and denied the motion. Petitioner was sentenced on January 28, 2011. On appeal, the conviction was affirmed.

## II.    STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

When a claim has been adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012). A state-court decision involves an "unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362,

407 (2000). Federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to state court decisions. *See Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011); *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013). A state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (factual determinations of state trial and appellate courts are presumed to be correct).

## III.  DISCUSSION

Although the Petition asserts four claims, it really only raises two distinct claims—Grounds One, Two, and Four essentially state the same claim, that the State violated his Sixth Amendment right to a speedy trial. Ground Three of the Petition challenges the trial court's restitution order. The Court first addresses the restitution claim.

### A. Restitution

The Court denies the restitution claim, because that is not a cognizable claim on federal habeas. "Restitution orders and fines . . . are not sufficient restraints on the liberty of a criminal offender to constitute 'custody.'" *Kolasinac v. United States*, No. 13-1397, 2016 WL 1382145, at *4 (D.N.J. Apr. 7, 2016) (citing *Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003), *United States v. Ross*, 801 F.3d 374, 380-81 (3d Cir. 2015)). "[B]ecause [habeas relief] is available only

to those seeking release from custody, [it] is not available to those . . . seeking to challenge fines or restitution orders." *Id.*

In his Reply, Petitioner makes a conclusory statement that "[s]ince the amount of restitution effects the length of incarceration the improper and illegal order of restitution must also be vacated." ECF No. 8 at 4. However, he cites to no case law to support this statement, nor does he offer any evidence to show that *his* restitution order affected *his* sentence. There is simply nothing in the record to suggest that the length of sentence in this case was tied to the amount of restitution. Petitioner additionally asserts that "[i]f the judgment of conviction is set aside so is the order of restitution." *Id.* While that may be true if the Court sets aside the conviction based on his speedy trial claim, it does not convert his challenge to the restitution order into its own independent claim. As such, relief on this ground is denied.

### B. Speedy Trial

Petitioner alleges that the length of prosecution in this case, which lasted over three-and-one-half years from arrest to guilty plea, violated his Sixth Amendment right to speedy trial. While Petitioner asserts his claim based on the overall length of prosecution, he specifically focuses on the fifteen-month delay between arrest and indictment, a period of time during prosecution that he had little control or influence over.

The trial court, in denying Petitioner's motion to dismiss indictment, addressed both the pre-indictment and post-indictment periods. First, it found that the post-indictment delay in prosecution was largely due to a protracted plea negotiation, much of which was at the requests of Petitioner himself. *See* ECF No. 7-8 at 31-33. With regard to the pre-indictment delays, the trial court found that the delay was largely due to the complexity of the case—while the original arrest was based on a small number of charges, evidence uncovered subsequent to arrest revealed a

4

multitude of crimes that eventually resulted in a 26-count indictment. *Id.* at 35-36. It held that "I don't see how this Court could find that [the delay] was something that was something intentional or to be really set on the shoulders of the State as to why the reason for the delay." *Id.* at 34. On appeal, the appellate court echoed those findings, while additionally noted that "defendant never moved for a speedy trial during the pre-indictment period. R: 3:25-2." *Kushner*, 2012 WL 5990107, at *3.

The Sixth Amendment of the United States Constitution states, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI. "[T]he right to a speedy trial is fundamental and is imposed by the Due Process Clause of the Fourteenth Amendment on the States." *Barker v. Wingo*, 407 U.S. 514, 515 (1972). To determine if a defendant's right to speedy trial has been violated, courts employ a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (citing *Barker*, 407 U.S. at 530). Some of the factors courts should consider when applying this test are: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Brillon*, 556 U.S. at 90; *Barker*, 407 U.S. at 530. While deliberate delays by the prosecution obviously weigh heavily against the State, "more neutral reasons such as negligence or overcrowded courts weigh less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Brillon*, 556 U.S. at 90 (internal quotation marks omitted).

Although inordinate delays would surely impair a defendant's ability to present an effective defense, "the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense." *United States v. MacDonald*, 456 U.S. 1, 8

(1982) (quoting *Barker*, 407 U.S. at 532-33). Therefore, the primary purpose of this right, beyond preventing prejudice to the defendant's ability to present a defense, is to "minimize the possibility of lengthy incarceration prior to trial, to reduce the . . . impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *Id.* A guilty plea does not extinguish a defendant's right to speedy trial, because "[a] guilty plea [only] renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilt is validly established." *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975). Once a *Barker* inquiry has been triggered, it is the State, not the defendant, who bears the burden of justifying the delay. *See Barker*, 407 U.S. at 527.

Before the Court addresses the merits of the state court holding, the Court first addresses Petitioner's contention that the state courts' factual findings were not supported by the record evidence. On federal habeas, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This Court does *not* review the state court's factual findings *de novo*, as Petitioner seemingly implies. Petitioner specifically challenges the state courts' findings that (1) the pre-indictment delay was caused by the complexity of the case, and (2) the post-indictment delay was caused by the prolonged plea negotiation at his own requests, but he offers no clear and convincing evidence to rebut those findings—in fact, he offers no new evidence at all. Indeed, in support of its factual findings, the trial court explicitly listed the numerous continuances requested by Petitioner during plea negotiation, and recounted the lengthy investigation that was required to secure the 26-count

indictment against him, *see* ECF No. 7-8 at 31-36, none of which Petitioner rebutted with contradicting evidence. Thus, the Court presumes that those factual findings were correct.

Nevertheless, even accepting those factual findings, the Court has some concerns over the state courts' holdings. Both the trial court and the appellate court correctly applied the *Barker* test to analyze the speedy trial claim, so this is not a case where the state court applied the incorrect law. However, even given their factual findings, it seems that the state courts gave short shrift to the *Barker* factors. For example, they found that the delays were not intentionally caused by the State. But as the above case law makes clear, intentional conduct by the State was *not* required to find a speedy trial violation. Indeed, without good reasons, this Court would never question the integrity and dedication of our overworked and underappreciated prosecutors around the country, both at the federal and state level, and would just assume that most speedy trial violations are simply the result of negligence or a severe lack of resources. But as the Supreme Court has held, "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Brillon*, 556 U.S. at 90; *see Strunk v. United States*, 412 U.S. 434, 436 (1973) (rejecting the lack of personnel in the United States Attorney's Office as a justification for delay to trial); *Barker*, 407 U.S. at 531. Any other holding would make the speedy trial protection of the Constitution utterly irrelevant—there can be no speedy trial if the State can simply excuse itself from that requirement by claiming a lack of resources.

The Court is also concerned by the state courts' reliance on the complexity of the case as a valid reason for the pre-indictment delay. The Court questions the relevance of that finding. The Court can see no reason why the State could not have simply indicted Petitioner on the original charges, and when the investigation revealed more wrongdoing, moved to amend the indictment. Indeed, that is what routinely occurs in federal prosecution, mostly due to the requirement of the

federal Speedy Trial Act, which requires a formal indictment against a defendant within 30 days of arrest, *see* 18 U.S.C. § 3161(b)—in its wisdom, Congress recognized that criminal prosecution should not even begin unless the government has already conducted sufficient investigation to quickly indict a defendant before seeking to impose the drastic restriction on a defendant's liberty by placing him under arrest. There was simply no good reason for the State to put Petitioner in limbo for fifteen months while it conducted pre-indictment investigation. The Court recognizes that requiring the State to proceed with trial, while further investigation continues to uncover more wrongdoing, would cost more resources, but that is the price we pay for the constitutional guarantee of a speedy trial. As the Supreme Court explained,

> Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it.

*Doggett v. United States*, 505 U.S. 647, 657 (1992).

Additionally, the Court takes issue with the state courts' trivialization of the prejudice Petitioner suffered. In relying on the trial court's reasoning, the appellate court stated that the "restrictions on travel, anxiety and embarrassment of the kind suffered by defendant, and defendant's inability to continue to pay for his private attorney were common problems faced by criminal defendants." *Kushner*, 2012 WL 5990107, at *3. The state courts seem to have entirely missed the point of a speedy trial protection. Of course these are common problems faced by criminal defendants—that is why we have a constitutional provision to protect against such evils. The protection exists to "minimize the possibility of lengthy incarceration prior to trial, to reduce the . . . impairment of liberty imposed on an accused while released on bail, and to shorten the

disruption of life caused by arrest and the presence of unresolved criminal charges." *MacDonald*, 456 U.S. at 8. There was nothing trivial about the prejudice Petitioner suffered while awaiting to be indicted, even if it was common—the suggestion that criminal defendants should be grateful there are not more "uncommon" problems in New Jersey is absurd. Perhaps the state courts have grown accustomed to the speedy trial issues that are prevalent in New Jersey, but relaxed enforcement of the speedy trial guarantee inevitably increases noncompliance by the government. *See United States v. Watkins*, 339 F.3d 167, 179 (3d Cir. 2003).

Finally, while the trial court found that Petitioner was diligent in asserting his speedy trial right during prosecution, *see* ECF No. 7-8 at 37 ("[T]he defendant did assert his rights. . . . So this is not a factor that I would find that would militate against the defendant."), the appellate court found that Petitioner should have asserted his right during the pre-indictment period, citing New Jersey Court Rule 3:25-2 for support. Beyond the obvious flaw that Petitioner would be hard-pressed to assert a speedy trial right when there was not an ongoing trial, Rule 3:25-2 states that "[a] defendant who has remained in custody awaiting trial on an indictment, other than for a capital offense, for at least 90 consecutive days after the return of that indictment may move for a trial date." Here, Petitioner was not in custody, nor was he awaiting trial on an indictment during the *pre-indictment* period, so the Court fails to see how Rule 3:25-2 applied.

In sum, the Court is troubled by the state courts' *Barker* analyses. However, it cannot not find that their holding was an unreasonable application of established federal law, based on an unreasonable determination of the facts. It is not enough that this Court finds the state court decision to be incorrect; it must be *unreasonable*. *William v. Taylor*, 529 U.S. 362, 410 (2000). "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* (emphasis in the original). "[A] federal habeas court may not issue the writ simply

because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. Habeas relief is only warranted when "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "If this standard is difficult to meet, that is because it was meant to be." *Id.*

Here, accepting the state courts' factual findings as correct, the Court cannot find that the state courts' decision was unreasonable. Because the state courts found that the post-indictment delay was entirely due to plea negotiation at the requests of Petitioner, the Court must discount that entire delay against Petitioner in a *Barker* analysis.[2] Therefore, the only delay that may contribute to a speedy trial violation was the fifteen-month delay between arrest and indictment. That was only three months more than the minimum threshold necessary to even trigger a *Barker* analysis. *See Doggett*, 505 U.S. at 652 n.1 ("[P]ostaccusation delay . . . [of] at least [] one year . . . marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry."); *but see Strunk*, 412 U.S. at 440 (dismissing an indictment where the lower court found that a 10-month delay between indictment and arraignment denied the defendant of a speedy trial). Juxtaposed with that minimal delay was the fact that Petitioner was not incarcerated pre-indictment; he was released on bail. While Petitioner undeniably suffered prejudice, weighing that prejudice—without prison time—against the minimal delay, the Court cannot find the state courts'

---

[2] Petitioner seems to attribute the prolonged plea negotiation on the State, because he was represented by a public defender funded by the State. However, "[a]ssigned counsel, just as retained counsel, act on behalf of their clients, and delays sought by counsel are ordinarily attributable to the defendants they represent." *Brillon*, 556 U.S. at 85.

decision, that there was no speedy trial violation under *Barker*, to be unreasonable, even though the State proffered no good reason for the delay. Accordingly, relief on this ground is denied.

### C. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

Here, the Court finds that reasonable jurists could disagree with the Court's resolution of the speedy trial claim. However, Petitioner has failed to make a substantial showing of the denial of a constitutional right on the restitution claim. As such, the Court issues a certificate of appealability on the speedy trial claim only. *See* Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## IV.   CONCLUSION

For the reasons set forth above, the Petition is DENIED, and a certificate of appealability is GRANTED for the speedy trial claim only.

_____
**Peter G. Sheridan, U.S.D.J.**

Dated: